## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                              CRIMINAL ACTION

VERSUS                                                15-159-SDD-EWD

DWIGHT JONES

### <u>RULING</u>

This matter is before the Court on the *Motion to Suppress*[1] filed by the Defendant, Dwight Jones ("Defendant").   The United States ("the Government") has filed an *Opposition*[2] to this motion.   The Court held an evidentiary hearing on this motion on February 17, 2016, took the matter under advisement, and allowed the parties to file post-hearing briefs.[3]   The Court has considered the arguments of the parties, the testimony and evidence presented at the hearing, and the law as applied to the facts of this case. For the reasons set forth below, the Defendant's motion shall be granted.

## I.      FACTUAL BACKGROUND[4]

The Defendant was indicted on October 29, 2015 for one count of possession of a firearm by a convicted felon.  The Defendant has filed a motion to suppress all evidence resulting from his traffic stop and arrest on June 2, 2015.

The Government claims that, on June 2, 2015, at around 11:30 pm, Officer Ronald Norman, who was on patrol with the Baton Rouge Police Department ("BRPD"), spotted

---

[1] Rec. Doc. No. 24.
[2] Rec. Doc. Nos. 28 & 31.
[3] *See* Rec. Doc. Nos. 39 & 40.
[4] The factual background was derived from the Parties' briefs and testimony presented at the hearing.
31982

the Defendant's vehicle, a silver Nissan Altima, which had just passed him, allegedly without a visible permanent rear license plate or temporary registration tag.  Although the initial police report prepared by Officer Norman stated that he could not see a visible license plate, Officer Norman testified at the hearing that he saw a piece of paper affixed to the left rear windshield and that he believed this paper to be a temporary license plate tag.   However, because Officer Norman could not discern the dates of issue and expiration on the temporary tag, he initiated a traffic stop.

Officer Norman radioed Sergeant Troy Lawrence and advised that he was going to stop Defendant's vehicle.   Officer Norman initiated the traffic stop, and Defendant pulled over.   Officer Norman pulled directly behind the car, and Sgt. Lawrence parked behind Norman.   The only passenger in the Defendant's vehicle was his young daughter, who was in the back seat.   Despite the presence of streetlights, the officers claim that it was very dark.

Once the officers exited their vehicles, Officer Norman advised Sgt. Lawrence why he initiated the stop.   As the officers approached the vehicle, they observed a valid temporary tag in the left corner of the rear windshield.   However, the officers did not believe it was appropriate to return to their cars without offering the Defendant an explanation for the stop.   Thus, the Government contends Norman was going to advise the Defendant that he stopped him because the temporary tag was difficult to see.

Nevertheless, when Officer Norman approached the vehicle, he observed an open can of Four Loko malt liquor in the cup holder of the center console.   After observing the open container of alcohol and concluding that the Defendant might have committed a crime, he asked the Defendant if he had any weapons in the car.   Defendant responded

31982

in the negative.  Officer Norman instructed the Defendant to exit the vehicle to speak to him outside of his daughter's hearing.  Defendant exited the car and walked with Officer Norman to the rear of the vehicle; the front door remained open.

Meanwhile, Sgt. Lawrence walked around the vehicle and looked inside it with his flashlight.  The Government maintains that, while never actually placing any portion of his body inside the vehicle, Sgt. Lawrence observed the black handle of a pistol or its extended magazine sticking out from underneath the driver's seat.  At this point, Sgt. Lawrence instructed Officer Norman to handcuff the Defendant.  Officer Norman asked Defendant if he was a convicted felon, to which the Defendant responded affirmatively.  Officer Norman ran Defendant's criminal history and confirmed his status, then read the Defendant his *Miranda* rights.  Officers seized the pistol, a Glock model 22 Gen 4, .40 caliber semi-automatic, bearing serial number WDM052, along with its 30-round magazine loaded with 21 rounds of ammunition, and the Defendant was taken to jail.

The next morning, Defendant placed two calls from the jail's central area.  Defendant allegedly stated in the first call that he really "f—ed up this time" and got charged with illegally carrying another gun.  In the second call, Defendant allegedly stated that he got caught with a gun and "couldn't run" because he couldn't leave his daughter.

On November 4, 2015, BRPD Officer Michael Blondeau, who had been assigned to investigate the theft of the stolen gun found in Defendant's car, interviewed the Defendant in EBR Parish prison.  After he was given his *Miranda* rights, the Defendant allegedly admitted he bought the gun for $275 because, although he knew it was stolen, he liked the gun and considered it a "good deal."

31982

## II.    PARTIES' ARGUMENTS

The Defendant moves to suppress all evidence obtained from this traffic stop. Defendant contends that the evidence of the firearm found in his car should be suppressed because the officers did not have reasonable suspicion to initiate the traffic stop, and because the officers unconstitutionally prolonged the traffic stop after determining the Defendant's car had a valid temporary registration tag.  Defendant agrees that La. R.S. 47:521 requires temporary license plates to be visibly displayed in the rear window of a vehicle and maintained in a condition that is clearly legible and free from foreign materials.   However, Defendant also contends that Officer Norman and Sgt. Lawrence, who conducted the traffic stop on the date in question, have since admitted that they could see the valid temporary license plate in Defendant's rear window after they began approaching his vehicle to conduct the traffic stop.  Defendant contends that, once the tag was seen by the officers, there was no need to continue with the traffic stop.

The Government opposes Defendant's motion on several grounds.   First, in light of the conditions at the time of the stop, the Government contends that it was objectively reasonable, even if a mistake, for Officer Norman to stop the Defendant because he could not decipher whether the paper he observed on the rear window of Defendant's vehicle was a temporary registration tag in compliance with Louisiana law.  In the alternative, the Government contends that the stop was constitutional because Officer Norman could not decipher the numbers on the temp tag due to the angle of the rear window to which it was affixed and the darkness of night.  Next, the Government claims that the stop was lawfully prolonged when Officer Norman observed an open can of alcohol in the Defendant's console.  The Government contends that the officers were at all times in good faith in

31982

conducting this stop and, upon realizing his mistake, Officer Norman's decision to advise the Defendant why he initiated the stop was in the scope of the stop. Further, the open container created reasonable suspicion to continue the stop and investigate further, and the firearm was discovered in plain view.

## III.  LAW & ANALYSIS

### A.  Motion to Suppress

Generally, "[t]he proponent of a motion to suppress has the burden of proving, by a preponderance of the evidence**,** that the evidence obtained was in violation of the Fourth Amendment.[5]  Conversely, at a suppression hearing, the Government must prove, by a preponderance of the evidence, that the challenged evidence was lawfully obtained.[6]

### B.  *Terry* Traffic Stops

The legality of traffic stops are analyzed for Fourth Amendment purposes under the standard articulated in *Terry v. Ohio*.[7]  "This standard is a two-tiered reasonable suspicion inquiry: (1) whether the officer's action was justified at its inception, and (2) whether the search or seizure was reasonably related in scope to the circumstances that justified the stop in the first place."[8]  "In addition, 'the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time.'"[9] "However, once an officer's suspicions have been verified or dispelled, the detention must end unless there is additional articulable,

---

[5] *United States v. Kelley,* 981 F.2d 1464, 1467 (5th Cir.1993) (quoting *United States v. Smith*, 978 F.2d 171, 176 (5th Cir.1992)).
[6] *United States v. Valenzuela*, 716 F.Supp.2d 494, 500 (S.D. Tex. 2007) (citing *United States v. Matlock*, 415 U.S. 164, 178 n. 14 (1974)).
[7] 392 U.S. 1 (1968).
[8] *United States v. Valadez*, 267 F.3d 395, 398 (5th Cir.2001) (citing *Terry*, 392 U.S. at 19–20).
[9] *Id.* (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983).
31982

reasonable suspicion."[10]   "'At that point, continuation of the detention is no longer supported by the facts that justified its initiation.'"[11]

Considering the first prong of the *Terry* analysis, the Fifth Circuit has held that, "for a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle."[12]   The Supreme Court has instructed that, in making a reasonable suspicion inquiry, a court "must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing."[13]   The Fifth Circuit has held that "reasonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure."[14]

In evaluating the totality of the circumstances, a court may not consider the relevant factors in isolation from each other.[15]   In scrutinizing the officer's basis for suspecting wrongdoing, it is clear that the officer's mere hunch will not suffice.[16]   It is also clear, however, that reasonable suspicion need not rise to the level of probable cause.[17]

In a recent opinion, the Fifth Circuit discussed the issue of whether a traffic stop is justified at its inception.[18]   The Fifth Circuit noted that, "if the alleged traffic violation

---

[10] *Id.*
[11] *Id.* (quoting *United States v. Shabazz*, 993 F.2d 431, 436 (5th Cir.1993)).
[12] *U.S. v. Lopez–Moreno*, 420 F.3d 420, 430 (5th Cir. 2005).
[13] *United States v. Arvizu*, 534 U.S. 266, 273 (2002).
[14] *Lopez–Moreno*, at 430.
[15] *Arvizu*, 534 U.S. at 274.
[16] *Terry*, 392 U.S. at 27.
[17] *Arvizu*, 534 U.S. at 274.
[18] *U.S. v. Raney*, 633 F.3d 385 (5th Cir. 2011).
31982

forming the basis of the stop was not a violation of state law, there is no objective basis for justifying the stop."[19]  The Fifth Circuit articulated as follows:

> The government bears the burden of proving that the stop was constitutional when, as here, the stop and search were conducted without a warrant. Thus, the suppression hearing provided the government the opportunity and obligation to present evidence establishing the validity of the traffic stop.[20]

In this case, the Defendant claims that the officers did not have reasonable suspicion necessary to make a traffic stop at the outset of the encounter, nor did they have reasonable suspicion to extend the stop once the officers determined that the Defendant had a valid temporary tag displayed in his rear window.

The Government contends that, considering the time of night and the conditions surrounding the stop, Officer Norman had reasonable suspicion to believe the Defendant's vehicle lacked a temporary registration tag that was clearly visible in compliance with Louisiana law.  Considering the requirement of La. R.S. 47:521 that a temporary registration tag "shall at all times be in a clearly visible place and position," the Government contends the stop was justified at its inception because Officer Norman had reasonable suspicion to believe the Defendant's tag was not in compliance with Louisiana law.

The Government relies on *United States v. Fontenot*,[21] where this issue was addressed.  Fontenot was charged with possession of a firearm by a convicted felon and moved to suppress the evidence of the firearm arguing that the traffic stop was unlawful

---

[19] *Id.*, at 340.
[20] *Raney*, 633 F.3d at 392.
[21] No. 07-40493, 284 Fed. Appx. 193 (5th Cir. 2008).

31982

at the outset.[22]  The officers testified that they had observed Fontenot driving a vehicle that did not display a rear license plate.  Upon approaching the vehicle and shining a spotlight on it, the officers could then see a temporary license plate lying on the rear dashboard but could not read it.  Fontenot argued that, because the tag was visible from the rear of the vehicle, the stop was unlawful.[23]  The district court and the Fifth Circuit disagreed.  Citing the applicable Texas law regarding the display of temporary license tags, the court held:

> Because the transportation code requires that temporary tags be displayed in accordance with the rules of the administrative code, the officers' stop of Fontenot's vehicle was proper in light of the fact that the paper registration tag in the rear window was not legible from the rear of the vehicle as required by Texas law. The distance at which the tag was legible is irrelevant as both officers testified that they could not read the tag until after the stop.[24]

In the present case, the Government contends that Officer Norman had reasonable suspicion to believe the Defendant's car lacked a temporary registration tag.  Although he admittedly saw paper in the lower left corner of the rear window, given its positioning and the lighting conditions at the time, he could not reasonably identify it as such.  Under the reasoning of *Fontenot*, the Government contends the stop was lawful from the outset.

In the alternative, the Government also contends that Officer Norman may have made an objectively reasonable mistake in believing that Defendant's vehicle lacked a clearly visible temporary tag.  In *Heien v. North Carolina*,[25] the Supreme Court held generally that evidence is not suppressed when it is discovered as a result of an officer's

---

[22] *Id.* at *1.
[23] *Id.*
[24] *Id.*
[25] 135 S.Ct. 530, 539 (2014).

31982

objectively reasonable mistake of fact.  The *Heien* Court stated that, if it was objectively reasonable for an officer to suspect that a defendant's conduct was illegal, "there was no violation of the Fourth Amendment in the first place."[26]  The Government contends Fifth Circuit precedent also supports the Government's position should the Court find a mistake of fact in this case.

In *United States v. Montes-Hernandez*,[27] the defendant had moved to suppress evidence seized in a traffic stop based on an officer's contention the he was driving a vehicle with an obscured license plate in violation of Texas law.  The officer testified that he knew the vehicle was not from Texas, but he could not ascertain where the license plate had been issued because of a black frame around the edge of the plate.[28]  The officer admitted on cross examination that the only reason for the stop was the obscured license plate and, that upon closer inspection, he could tell that the plate had been issued in Chihuahua, Mexico.[29]

Pictures of the license plate were admitted into evidence.  The Texas statute at issue prohibits "a coating, covering, protective material, or other apparatus that ... alters or obscures one-half or more of the name of the state in which the vehicle is registered."[30]  The defendant's only argument was that because the frame on the license plate did not obscure at least half of the name of the issuing state, there was no violation warranting the traffic stop.  The district court denied the suppression motion, finding that the officer's

---

[26] *Id.*
[27] No. 08-51261, 350 Fed. Appx. 862 (5th Cir. 2009).
[28] *Id.* at 864.
[29] *Id.*
[30] *Id.* at 863, quoting Tex. Transp. Code § 502.409(a)(7)(B) (Supp.2008).
31982

belief that the defendant's license plate was in violation of Texas law was "an objectively reasonable mistake of fact *if* it was not at one-half."[31]

On appeal, the Fifth Circuit discussed the difference between an officer's mistake of law and a mistake of fact.  Affirming the district court, the Fifth Circuit stated as follows:

> Nonetheless, Montes maintains that stopping his vehicle could not have been reasonable because the officer's observations rendered it impossible for the officer to tell whether Montes had in fact violated the law. He maintains that if the officer could not tell with certainty that the state name was at least one-half obscured, any attempt to stop the purported offender would be unreasonable. Montes's argument falls by its own weight. To have an objectively reasonable suspicion, an officer does not have to determine that a suspect has in fact violated the law. Here, the district court found that it was a very close call regarding whether the frame obscured one-half of the state's name. Under these circumstances, we find that the arresting officer had an objectively reasonable suspicion that a traffic violation had occurred.
>
> In the alternative, as the district court also found, the officer's alleged mistake of fact regarding whether the frame obscured one-half of the issuing state's name provided the objective basis for reasonable suspicion.[32]

Similarly, in *United States v. Berragan-Espino*,[33] the district court for the Western District of Louisiana ruled that a traffic stop was justified at its inception because the officer's mistaken belief that the defendant's valid temporary paper license tag was not a government-issued license plate was objectively reasonable.[34]  The court noted that the temporary license plate did not appear to be a government issued license plate. Instead, the American flag design caused the plate to resemble a mere decorative plate or an

---

[31] *Id.* at 864 (emphasis in original).
[32] *Id.* at 867-68 (citations omitted).
[33] No. 08-00121, 2008 WL 4661627 (W.D. La. Oct. 17, 2008).
[34] *Id.* at *4.
31982

advertisement for a car dealership.[35]  While the defendant presented pictures showing the temporary tag in support of his motion to suppress, the court noted:

> Those photographs, especially D-2, do not depict what Trooper Beck saw under the circumstances at the time he saw it. It must be remembered that Trooper Beck first noticed the temporary plate at night while traveling 60-70 mph on I-20. It was not until Defendant's and Trooper Beck's vehicles were safely stopped on the side of the interstate that Trooper Beck could examine the plate more closely and determine that the plate was, in fact, a valid temporary license plate issued by the state of Georgia. The design of the plate is very unusual. Although a police officer for 13 years, Trooper Beck had never seen this type of temporary license plate before. His initial belief that the plate was not a valid government-issued plate was, under the circumstances, objectively reasonable.[36]

The court also noted the Louisiana statute[37] requiring that a license plate be "clearly legible and free from foreign materials," and stated that, "[a]rguably the tinted cover on Defendant's temporary license plate violated La.R.S. 47:521 because the plate was not 'clearly visible' and 'free from foreign materials.'"[38]

The case before the Court is readily distinguishable from the cases discussed above.  There has been no testimony or evidence presented in this case showing that the temporary tag was in any way altered or obscured by any foreign or vehicular substance or item.  Moreover, for the reasons set forth below, the Court finds that Officer Norman's testimony lacks sufficient credibility to justify a finding that he had reasonable suspicion to make this stop.

---

[35] *Id.*

[36] *Id.*

[37] *Id.,* citing La. R.S. 47:521.

[38] *Id.*, citing *United States v. Santiago*, 310 F.3d 336, 341 (5th Cir. 2002)(arguable violation of traffic law justified initial stop, even if it was unlikely defendant could have been convicted of that violation).*See also United States v. Fontenot*, 2008 WL 2660777 (5th Cir. 2008)(initial stop was justified because officers could not read temporary license plate-which was lying on the rear dashboard-until after the traffic stop; tag was not legible from the rear of the vehicle as required by Texas law); *United States v. Daniels*, 265 Fed.Appx. 219, 221-222(5th Cir. Feb. 7, 2008) (initial stop was justified because obscured paper registration tag in rear window was not visible as required by Texas law).

31982

## C. Credibility of Witnesses

The judge's role at a suppression hearing is to determine the credibility of witnesses and find the facts.[39]   At a suppression hearing, it is "well within the trial court's discretion" to weigh the evidence and make credibility determinations regarding conflicting testimony.[40]  The Court finds that Officer Norman lacked reasonable suspicion to stop the Defendant's car in this case.   Officer Norman testified that, on the night in question, he was stopped behind a line of cars at a red light. Officer Norman's suspicions arose when the Defendant pulled up in the lane next to his vehicle but stopped short even though "he had room to go forward."[41]   Officer Norman testified that the Defendant's Altima caught his attention because it "stopped pretty much in my blind spot on my left side … ."[42]  Officer Norman continued:  "And the reason why it caught my attention was because it had room to pull up.  But it seemed like when it saw my unit it immediately stopped."[43]  Officer Norman also testified that he "looked in the car, looked at the driver," and that the Defendant "looked at me then he sat back in his seat."[44]  Officer Norman testified that "him stopping and him leaning back in the seat so I couldn't – like he didn't want me to look at him or whatever.  That was suspicious."[45]

After a few seconds, the Defendant drove forward, and Officer Norman testified that, when he observed the Defendant's vehicle pass him, he noticed that it did not have a hard license plate but had what appeared to be a temporary tag in the back window.[46]

---

[39] *See United States v. Jones*, No. L12–10, 2012 WL 1309837, at *7 (S.D.Tex. Apr.16, 2012).
[40] *Norman v. Stephens,* No.H–13–0624, 2013 WL 6498979, at *21 (S.D.Tex. Dec.11, 2013).
[41] Transcript of Hearing, Rec. Doc. No. 36, p. 47, line 18.
[42] *Id.* at p. 15, lines 8-9.
[43] *Id.* at p. 17, lines 10-12.
[44] *Id.* at p. 17, lines 16-17.
[45] *Id.* at p. 48, lines 24-25 through p. 49, line 1.
[46] *Id.* at pp. 18-21.
31982

Officer Norman testified that he believed the white paper to be a temporary license tag, but could not make out the dates on it.[47]

What is particularly troubling to the Court is that Officer Norman's testimony at the hearing directly conflicts with his initial report of this incident, written "a day or two" after the Defendant's June 2, 2015 arrest.[48]  Officer Norman admitted that he failed to include the Defendant's "suspicious activity" in his report.[49]  Officer Norman's report not only fails to refer to any suspicious activity, it fails to document the presence or the condition of the temporary license tag or the car's rear window at all.  Officer Norman's police report, which he completed within 48 hours of the stop, states that he had "observed a Silver Nissan car traveling the same direction with **no visible license plate or temporary tag** on the vehicle."[50]  Faced with this inconsistency at the suppression hearing, Officer Norman testified that, "[w]hat I'm saying is I left some stuff out of the report.  And that was my fault."[51]  Further, Officer Norman testified that he only realized he had made an inaccurate report "a couple of weeks"[52] prior to the date of the suppression hearing.  Officer Norman further admitted that he took no steps to correct the inaccurate report, choosing rather "to

---

[47] *Id.* at p. 21,
BY THE COURT: When you first saw the piece of paper in the back window, did you believe it to be a temporary tag?
CORPORAL NORMAN: Yes, Ma'am. I believed it to be a temporary tag. But like I said before, I couldn't make out the numbers, so I wanted to make sure that it was a valid temporary tag.
THE COURT: But from all outward appearances, it looked like a temporary tag, you just couldn't make out the numbers on it?
CORPORAL NORMAN: Yes, Ma'am. Where it was placed I knew that's where normally a temporary tag would be placed.
THE COURT: But I'm talking about like from coloring or from size; was there anything that made you believe, well, that's not even a temporary tag at all?
CORPORAL NORMAN: No, Ma'am. There's nothing that made me think that it wasn't a temporary tag.
[48] *Id.* at p. 50, line 16.
[49] *Id.* at p. 52.
[50] *Id* at pp. 50-52
[51] *Id.* at p. 54, lines 6-7.
[52] *Id.*, lines 14-15.
31982

come in here and explain to yourself and the Judge why I didn't put this in here and it was foresight on my behalf."[53]   Despite this choice, Officer Norman never offered any explanation at the hearing for the inaccuracies in the report, written within two days of Defendant's arrest.   He likewise failed to explain why his report conflicted with the testimony given at the motion hearing.   Officer Norman acknowledged that his report never indicates that he actually did, in fact, eventually see a valid temporary license tag, but claimed that he "wouldn't see it as an inaccuracy; I would count it as something I didn't add to my report."[54]   Officer Norman justified this omission on the grounds that, in his mind, his failure to be able to decipher the numbers on the temp tag rendered it "invisible."[55]   What is clear to the Court from the breadth of Officer Norman's testimony is that his initial report and subsequent discussions with the Government are rife with inconsistencies[56] which undermine the Government's "mistake of fact" argument.

Sgt. Lawrence, who has been employed by the Baton Rouge Police Department for nearly twenty years,[57] testified that the basis or reasonable suspicion for a traffic stop should be in an officer's report,[58] and he further acknowledged that, although mistakes are often made, the best practice is to "type a supplementary report."[59]   Sgt. Lawrence testified that:   "It's always advised to type a supplemental report if you want to add or change something prior to any meetings that you may have with a prosecutor or an attorney."[60]

---

[53] *Id.* at p. 55, lines 19-21.
[54] *Id.* at p. 61, lines 11-12.
[55] *Id.* at p. 62, lines 11-17.
[56] *See id.* at pp. 66-74.
[57] *Id.* at p. 81.
[58] *Id.* at p. 98, line 6.
[59] *Id.*, line 22.
[60] *Id.* at p. 98, lines 24-25 through p. 99, line 1.

31982

It is clear to the Court that Officer Norman was motivated to stop the Defendant based on the Defendant's alleged "suspicious" manner of evading the officer's sight while stopped at the red light.  The Court acknowledges that, "an officer's subjective motivations are irrelevant in determining whether his conduct violated the Fourth Amendment."[61]  However, the Court has serious doubts about the credibility of Officer Norman's testimony based on the numerous inconsistencies, inaccuracies, and omissions discussed herein. Again, the Court is troubled by the changing rendition of events. By Officer Norman's police report, there was *no tag* at the time of the stop, but only a few weeks before the hearing, Officer Norman remembered that he had in fact observed a temporary tag at the time of the stop.[62]  Considering testimony, which was wholly inconsistent with the initial police report, the Court finds that the Government failed in its burden of establishing the validity of the stop based upon articulable facts sufficient to give rise to reasonable suspicion.  Even the Government appears to concede this point.  In its post-hearing brief, the Government posits that Officer Norman "repeatedly testified that he saw what he thought *might be* a valid temporary tag – in other words, he *suspected* it was a valid temporary tag – but he could not come to that conclusion because he could not read the tag's expiration date."[63]  If Officer Norman "suspected" that the temporary tag was valid,

---

[61] *United States v. Williams*, No. 06-50140-01, 2007 WL 184996 at *3 (W.D.La. Jan.22, 2007)(citing *Scott v. United States*, 436 U.S. 128, 138 (1978); *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). *See also Goodwin v. Johnson*, 132 F.3d 162, 173 (5th Cir.1997) ("So long as a traffic law infraction that would have objectively justified the stop had taken place, the fact that the police officer may have made the stop for a reason other than the occurrence of the traffic infraction is irrelevant for purposes of the Fourth Amendment....").

[62] At the suppression hearing, the defendant introduced a copy of the temporary tag that was affixed to the rear window of the Nissan Altima which the defendant was driving at the time of the stop. Exhibit 501; Rec. Doc. 32

[63] Rec. Doc. No. 40, p. 8.

31982

as argued by the Government, then the Government has failed to show that Officer Norman had an objectively reasonable suspicion that a traffic violation had occurred.[64]

"A court may not arrive at reasonable suspicion 'simply by piling hunch upon hunch.'"[65]   Given the Court's doubts about the credibility of Officer Norman's testimony, the Court finds that there was not an objectively reasonable basis to stop the Defendant's vehicle.   It seems all too convenient that Officer Norman would remember that there actually was a temporary tag on the Defendant's rear window, albeit allegedly unreadable, mere weeks before he is set to give testimony in this motion to suppress hearing.   There was never any credible or sufficient explanation given for the inaccuracies and omissions in the initial report, or why no supplemental report was provided as soon as Officer Norman became aware of the report's deficiencies.   Because there was no legal reason to conduct a traffic stop, the Court finds that the stop was not justified at its inception. Accordingly, all evidence seized as a result of the illegal stop must be suppressed.

---

[64] The Government's alternative argument that Officer Norman was justified in making the stop because he had reasonable suspicion that the city traffic law, which requires a license plate be current and properly displayed, (Baton Rouge Code of Ordinances § 11:252), had been violated, is likewise without merit.  Based on the testimony at trial, the angle at which the tag was affixed to the rear bumper did not prevent Norman from recognizing it as a temporary tag.

[65] *United States v. Ross*, 400 F.Supp.2d 939, 947 (W.D. Tex. 2005)(quoting *United States v. Venezuela*, 365 F.3d 892, 897 (10th Cir. 2004)).

31982

IV.     **CONCLUSION**

For the reasons set forth above, the Defendant's *Motion to Suppress*[66] is GRANTED.   All evidence seized as a result of the search of Defendant's vehicle is suppressed.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>May 11, 2016</u>.


_____

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[66] Rec. Doc. No. 24.
31982